NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN FISHER,<br><br>Plaintiff,<br><br>v.<br><br>GOLDEN SHORE CORPORATION, et al.,<br><br>Defendants. | Civil Action No. 11-cv-02661<br><br>OPINION |

JOSE L. LINARES, U.S.D.J.

This matter comes before the Court upon motion by defendants, Golden Shore Corporation and Cosco Container Lines, Co., for summary judgment (the "Motion" or "Motion for Summary Judgment"). (ECF No. 103). Pursuant to Rule 78 of the Federal Rules of Civil Procedure, no oral argument was heard. Upon consideration of the Parties' submissions, and for the reasons stated below, Defendants' Motion for Summary Judgment, (ECF No. 103), is **DENIED**.

I. BACKGROUND

This action arises from an alleged injury to the Plaintiff, John Fisher (hereinafter "Plaintiff"). Plaintiff was employed as a longshoreman by Maher Terminals at a facility located within the Port of Elizabeth in Elizabeth, New Jersey. (Statement of Undisputed Facts ("SOUF"), ECF No. 103-1, ¶ 2). Plaintiff allegedly suffered a lower back injury after a slip and fall incident occurred on board the M/V River Elegance (the "Vessel") on

1

September 17, 2009 at 1100 hours. (Id. ¶ 1). In the course of his duties, Plaintiff was walking on a catwalk that runs across the Vessel between cargo bays when he encountered a large pile of lashing bars obstructing his path. (Id. ¶ 2). The walkways were wet because it had been raining. (Id. ¶ 11). Plaintiff claims that as he proceeded to walk across the pile of lashing bars, the pile shifted under his weight and caused him to slip, fall, and sustain injuries. (Id. ¶ 3). Plaintiff walked off the vessel after being injured and reported his injury to the stevedore. (Id. ¶ 17). Plaintiff contends that the cause of his injury was the pile of lashing bars blocking the passageway. (Id ¶ 5).

In light of the foregoing, Plaintiff commenced the instant cause of action on May 10, 2011 against A.G. Ship Maintenance Corp., the lashing company who serviced the Vessel at in Port Elizabeth, Golden Shore Corp., the Vessel operator, and COSCO Container Co., the Vessel owner. (ECF No. 1). This Court's jurisdiction is premised on maritime jurisdiction, 28 U.S.C. § 1333. The Amended Complaint contains the following claims: (1) a violation of 33 U.S.C. § 905b of the Longshore & Harbor Workers Compensation Act by Golden Shore Corporation and Cosco Container Lines, Co., Ltd.; and (2) a breach of the duty of care by A.G. Ship Maintenance Corp. through reckless, careless, and negligent discharge of lashing bars. (ECF No. 28). Defendant A.G. Ship Maintenance Corp. moved for summary judgment and the motion was granted on October 21, 2013. (ECF No. 64). A.G. Ship Maintenance Corp. was terminated as a Party on November 14, 2013. (ECF No. 69). Defendants Golden Shore Corporation and Cosco Container Lines, Co. now move for Summary Judgment on Plaintiff's remaining claims. (ECF No. 103).

## II. LEGAL STANDARD

Summary judgment is appropriate when, drawing all reasonable inferences in the non-movant's favor, there exists no "genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). If a reasonable juror could return a verdict for the non-moving party regarding material disputed factual issues, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 242-43 ("At the summary judgment stage, the trial judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

## III. DISCUSSION

As stated above, Plaintiff's Amended Complaint now only contains the following claim: a violation of 33 U.S.C. § 905b of the Longshore & Harbor Workers Compensation Act by Golden Shore Corporation and Cosco Container Lines, Co., Ltd. Because this Court finds that a genuine issue of material fact remains as to, among other issues, the condition of the Vessel and the avoidability of the lashing bars, summary judgment shall be appropriately denied.

A.   **Plaintiff's Claim under the Longshore & Harbor Worker Compensation Act ("Longshore Act")**

The Longshore Act established a federal workers' compensation program that provides longshoremen and their families with benefits for work-related injuries and requires employers to pay statutory benefits regardless of fault. *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 96 (1994). Congress amended the Longshore Act in 1972 and abolished longshoremen's right to recover against the owner of a ship for unseaworthiness, but an individual covered by the Longshore Act may "seek damages in a third-party negligence action against the owner of the vessel on which he was injured . . . ." *Howlett*, 512 U.S. at 96. The United States Supreme Court set forth the duties of care a ship owner or operator must fulfill under Section 905(b), which are: the turnover duty, the duty of active involvement, and the duty to intervene. *Scindia Steam Navigation Co., Ltd v. De Los Santos*, 451 U.S. 156, 156-157 (1981). Here, the turnover duty is at issue.

The turnover duty requires a ship owner or operator to exercise "ordinary care under the circumstances" to have the ship in a safe condition such that cargo operations can be carried out "with reasonable safety" and to warn the cargo crew of any hazards on the ship "that are known to the vessel or should be known to it . . . ." *Scindia*, 451 U.S. at 167 (citing *Marine Terminals v. Burnside Shipping Co.*, 394 U.S. 404, 415 (1969). The ship owner or operator may not be liable for breach of the turnover duty if the dangerous condition could not be discovered through reasonable care, if there is sufficient speculation that the condition did not exist when the vessel was turned over, or if the condition was easily discoverable and easily avoided. *Howlett*, 512 U.S. at 98.

4

Plaintiff, a longshoreman, claims that the turnover duty was breached here when "the management personnel, captain and crew, and vessel officers of the Vessel (River Elegance) failed to provide him with a safe work environment comporting with widely accepted customs and practices of the maritime industry." (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, ("Pl.'s Memorandum"), ECF No. 108, at 7). Similarly, Plaintiff contends the unsafe pile of lashing bars was not avoidable. In contrast, the crux of Defendants' argument in support of summary judgment is that the Plaintiff has not proven how the pile of lashing gear was created and that the pile was obvious and therefore Plaintiff could have avoided injury by using reasonable care. (Defendants' Reply Memorandum of Law in Support of Motion for Summary Judgment, ("Defs.' Memorandum"), ECF No. 109, at 1-2). The Court cannot agree with Defendants at this juncture.

## B. Genuine Factual Disputes Exist

Though the basic account of what occurred on September 17, 2009 is not in dispute, most of the details surrounding the events of that day are disputed by the parties. The main points of contention at the heart of this matter are: the extent to which the lashing gear was in plain sight and visible to the Plaintiff; when the pile of lashing gear was created; whether an adequate inspection of the ship's walkways was done upon its arrival; whether the Plaintiff had safer alternatives than walking over the lashing gear; whether lashing bars in walkways are expected and common obstacles for longshoremen; and whether longshoremen are supposed to report unsafe conditions or work through them. As discussed more fully below, these disputes create genuine factual issues concerning the

5

core of Plaintiff's claim and Defendants' defenses, thus summary judgment is inappropriate as these factual determinations must be left to the jury.

The first major dispute relates to the visibility of the lashing gear to Plaintiff as he proceeded across the walkway in bay 24. Defendants contend that the lashing gear was obvious and in plain sight, and that "Plaintiff saw the Pile from as far away as 10-20 feet." (SOUF ¶ 12). Plaintiff however asserts his view was blocked by the support structure of the elevated catwalk and that "Plaintiff could not really see how badly cluttered the catwalk was until after he had walked over the lashing gear toward the outboard hatch, and by then it was unreasonable to turn around." (Plaintiff's Response to Defendants' Local Rule 56.1 Statement of Material Facts Not in Dispute and Counter-Statement of Material Facts ("Pl.'s Response"), ECF No. 108-1, ¶ 12). Plaintiff cites to his deposition, photographs taken of the scene, and an affidavit for this assertion. The Parties' conflicting accounts of the visibility of the lashing gear to Plaintiff create a genuine factual dispute as to Defendants' defense that the lashing pile was easily observable and avoidable.

Additionally, also in dispute is *when* the pile of lashing gear was created. Defendants argue that Plaintiff does not know when the condition was created, (SOUF ¶ 6), while Plaintiff asserts they have presented "substantial evidence illustrating that the condition was created prior to the commencement of cargo operations." (Pl.'s Response ¶ 6). This factual dispute concerns who is at fault for the pile of lashing gear, or, put differently, whether the dangerous condition of the Vessel existed when the vessel was turned over. Undoubtedly, this issue proves central to Plaintiff's claim. *See Howlett*, 512 U.S. at 98 ("The ship owner or operator may not be liable for breach of the turnover duty

… if there is sufficient speculation that the condition did not exist when the vessel was turned over.").

Next, the Parties dispute whether the vessel's crew performed an adequate inspection of the vessel's walkways when the ship arrived at port. Defendants state that "[p]rior to arrival, the Vessel's crew performed routine inspections of the Vessel's walkways and there were no obstructions." (SOUF ¶ 9). Plaintiff denies this statement, arguing that the Vessel log "does not indicate that the crew performed an inspection of the entire ship with specificity," and that "there was significant evidence that COSCO's ships would regularly come in with unrecorded, cluttered walkways . . . ." (Pl.'s Response ¶ 9). Defendants cite to the Vessel log to show that no obstacles were found during inspection while Plaintiff cites to the deposition of Lasher Juan Rego to support his claim that ships regularly contained cluttered walkways. Whether the Vessel was adequately inspected when it arrived at port essentially determines whether the turnover duty was breached and is therefore material. The Court remains cognizant that in considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence (here, Plaintiff's evidence) "is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). With this premise in mind, bolstered by the juxtaposed recounts of the inspections of the Vessel, a reasonable fact-finder could certainly find that the Vessel's crew failed to properly inspect the Vessel.

The fourth fact in dispute is whether the Plaintiff had safer alternatives than walking across the lashing pile and violated company protocol by proceeding across the obstacle.

7

(SOUF ¶¶ 18, 21-23). Plaintiff denies that there were viable safer alternatives available to him and incorporates by reference Section II of his Memorandum of Law, (Pl.'s Response ¶¶ 18, 21-23), which states that Defendants' safer alternatives arguments must fail because Defendants ignore the fact that Plaintiff could not see the full extent of the hazard on the walkway, because the hazard was not one a longshoreman would commonly encounter, and because it would have taken too long to report the lashing pile and have the obstruction cleared. (Pl.'s Memorandum, at 17-21). Both Parties rely on the depositions of those familiar with industry practices for their arguments on this point. In the same vein, it is disputed by the Parties whether to a longshoreman it is common to encounter lashing bars obstructing walkways in the course of cargo operations. Defendants assert that "[l]ashing bars placed on walkways during the course of cargo operations are common," and "[i]t is up to the individual to be aware of his surroundings." (SOUF ¶ 24). Plaintiffs respond that "[t]he extent of the obstruction was not common and Plaintiff was unable to view the full extent of the hazard before attempting to walk through the passageway of Bay 24." (Pl.'s Response ¶ 24). Here again, both Parties rely on the depositions of those familiar with industry practices for their arguments on this point. Parties' conflicting views here also relate to Defendants' defense that the lashing pile was easily observable and avoidable. This Court finds that the credibility of those deposed or the weight attributable to each, must be sorted out by the fact-finder to determine if the lashing pile was easily avoidable or the obstruction was common and/or easily avoidable.

Finally, whether longshoremen are required to stop working and report unsafe conditions they come across or rather are expected to continue with their duties in order to reach performance goals is disputed. Defendants argue that "Maher Terminals' work

8

procedures require that tasks be performed in a safe manner and if a situation is deemed unsafe, that the worker is required to notify a supervisor in order to rectify the situation." (SOUF ¶ 27). Plaintiff does not dispute that this language is contained in Maher Terminals' written policies, but alleges that "Plaintiff and fellow longshoremen Juan Rego, John Natale and the expert opinion of Captain Spooner all contend that the unwritten policy of Maher Terminals is to work through unsafe conditions in order to meet production demands." (Pl.'s Response ¶ 27). Again, this Court finds this factual dispute is not ripe for summary judgment as the Plaintiff, at this juncture, shall receive all favorable and reasonable inferences and thus a fact-finder could conclude that Plaintiff was forced to attempt to work through the pile of lashing gear which proved unsafe.

Accordingly, these aforementioned factual disputes sit at the very core of Plaintiff's claim and Defendants' defenses, as both sides present depositions, expert testimony, and physical evidence to support their versions of the pertinent facts, and thus there is more than mere "metaphysical doubt" as to the material facts of this case, but rather a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment, (ECF No. 103), is **DENIED**. An appropriate Order accompanies this Opinion.

Date: June 25, 2015

Jose L. Linares
United States District Judge

9